

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-12-00188-CR

---

JENNIFER BANNER WOLFE                                          APPELLANT

V.

THE STATE OF TEXAS                                                  STATE

----------

FROM THE 213TH DISTRICT COURT OF TARRANT COUNTY
TRIAL COURT NO. 1200447D

----------

## DISSENTING OPINION

----------

I respectfully dissent. I cannot agree with the majority's contention that Appellant Jennifer Banner Wolfe does not challenge on appeal the reliability of the State's experts' testimony concerning abusive head trauma as applied to Jack.[1] *See* Maj. Op. at 21–22. Rule 38.1(f) of the rules of appellate procedure

---

[1]The record establishes that she did so at trial; at the beginning of the bench trial, she objected to the State's expert testimony, challenging "the

provides that "[t]he statement of an issue or point will be treated as covering every subsidiary question that is fairly included." *See* Tex. R. App. P. 38.1(f); *accord Perry v. Cohen*, 272 S.W.3d 585, 587 (Tex. 2008) (explaining that under rule 38.1(f), "[a]ppellate briefs are to be construed reasonably, yet liberally, so that the right to appellate review is not lost by waiver"). The issue Appellant raises is as follows: "[T]he trial court abused its discretion by allowing unreliable medical expert opinion testimony on abusive head trauma." In her brief, she asserts that this court "should find that the trial court abused its discretion by admitting and relying upon the state experts' opinions that the injuries sustained [by Jack] were non-accidental." She also argues that "[t]he proponent of the scientific evidence must show, by clear and convincing proof, that the evidence is sufficiently relevant and reliable to assist the jury in accurately understanding other evidence or in determining a fact in issue." Reasonably, yet liberally, construing the issue expressly raised by Appellant, I would hold that the subsidiary question of the reliability of the State's experts' testimony concerning abusive head trauma as applied to Jack is fairly included in her issue on appeal. Therefore, I respectfully dissent from the majority opinion to the extent that it declines to address the issue of whether the expert opinion testimony of Dr. Roberts, Dr. Ranelle, and Dr. Coffman diagnosing Jack with abusive head trauma (that is, non-accidentally inflicted head trauma) was reliable.

---

underlying principle" of shaken baby syndrome or abusive head trauma as unreliable in the scientific community and not reliable in this case.

Moreover, based on my review of the State's experts' testimony, a serious question exists as to the reliability of their conclusion that Jack suffered abusive head trauma. The undisputed evidence at trial established the following: that seven-month-old Jack had experienced at least two prior brain bleeds in his head and did not have a normal, healthy brain at the time he became unconscious at Appellant's home;[2] that according to Jack's preoperative CT scan, the chronic bleeding in Jack's head and the brisk bleeding observed by Dr. Roberts during Jack's surgery were "side by side"; and that all three of the State's experts concluded that Jack's injuries could not have been caused by shaking alone but required a high-energy impact to Jack's head,[3] yet Jack had no external injuries,

---

[2]A preoperative CT scan showed that Jack's brain had been displaced toward the right side; the CT scan also showed older blood in Jack's brain, meaning that there had been bleeding in Jack's brain at least twice in the past. Jack's CT scan showed "bright white" accumulation, which was "new blood"; a "grayer" area, which was "older blood"; and an "even darker area," which was even older blood.

[3]Dr. Roberts opined that Jack's injuries could not have been caused by only shaking him. He testified that in a normal, healthy brain, the amount of force necessary to avulse a bridging vein would be that from a high-energy impact, such as a car accident or a fall from a second-story window.

Dr. Ranelle opined that the type of force required to create the injuries she saw in Jack's left eye would be something "very, very significantly traumatic," violent, and high energy. She explained that she had treated children who had fallen out of second-story windows or fallen out of shopping carts onto concrete floors who did not present with the serious retinal injuries that Jack experienced.

Dr. Coffman opined that the injury mechanism used in Jack's case was violent and high energy.

marks, bruises, fractures, spinal or neck injuries, or grip marks on his body.[4]  All

three of the State's experts agreed that when a child with a normal, healthy brain

experiences the constellation of subdural hematoma, retinal hemorrhages, and

no explanation for the injuries, the typical diagnosis is abusive head trauma.[5]

And all three of the State's experts agreed that Jack did not have a normal,

healthy brain before he experienced this diagnostic constellation.[6]  Yet, all three

---

[4]*Cf. Benefield v. State*, No. 02-14-00099-CR, slip op. at 4 (Tex. App.—Fort Worth Feb. 26, 2015, no pet. h.) (involving child victim of abusive head trauma and noting that he previously suffered a spiral arm fracture and presented at the hospital with numerous physical injuries, including an acute rib fracture, two healing rib fractures, ligamentous neck injuries, and corner fractures on the bottom of both his left and right femur bones and on the top of his left and right humerus bones).

[5]Dr. Roberts opined that the constellation of subdural hematoma, retinal hemorrhaging, and brain swelling is, in the absence of an explanation for the injuries, the result of a non-accidental trauma.

Dr. Ranelle opined that a diagnosis of abusive head trauma is "automatic" when a healthy, normal child presents with the constellation of retinal hemorrhaging, subdural hematoma, and the lack of an explanation for a child's injuries.

Dr. Coffman denied that she diagnoses abusive head trauma "based on a triad" and testified that she bases her diagnosis on the individual patient's history, presentation, and findings.  But she testified that the combination of the injuries suffered by Jack here—specifically, subdural hematoma, severe retinal hemorrhaging, and retinoschisis—is caused by "a force that would be likely to injure or kill a child."  And she agreed that these injuries are associated with abusive head trauma.

[6]On cross-examination, Dr. Roberts agreed that "something" was going on in Jack's brain to cause the prior bleeds and that because of Jack's prior brain bleeds, "we are not talking about a healthy brain."

still opined that despite Jack's already-injured brain, the existence of this diagnostic constellation in Jack meant that Jack's head trauma was intentionally inflicted—abusive head trauma.[7]

As the dissenting author, I decline to undertake a complete analysis of the reliability of the State's experts' testimony concerning abusive head trauma as applied to Jack. I write additionally only to point out that serious questions exist regarding the reliability of the experts' opinions as applied to the undisputed facts

---

Dr. Ranelle agreed that Jack's previous brain bleeds meant that Jack was not a "completely healthy child."

Dr. Coffman testified that Jack's brain had neomembranes from prior bleeds that had to have been caused by some type of trauma and that had not been reabsorbed. She also agreed that the old blood created pressure in the brain.

[7]Dr. Roberts opined that Jack's injury was non-accidental trauma based on the finding of retinal hemorrhages, brain swelling, and the subdural hematoma, coupled with the fact that Jack's injuries were inconsistent with Appellant's explanation of what had happened.

Dr. Ranelle opined that Jack's injuries were caused by an acceleration and deceleration force. When asked about the lack of external injuries to Jack, Dr. Ranelle testified, "I don't know what happened to [Jack]. Nobody came up with an explanation of what happened to [Jack]. . . . All I can tell you is that with this constellation of symptoms, you know, other children that I've seen, it is very consistent with a violent shaking, traumatic abusive force."

Dr. Coffman opined that only severe trauma could have caused the avulsed bridging vein, the retinal hemorrhages, and the retinoschisis in this case and that Jack's injuries could not have occurred from falling from the seated position—as Appellant had explained. Dr. Coffman maintained that "there had to be some sort of trauma to cause that to tear" in the bridging vein and said that the prior bleeds could not have caused the bridging vein to avulse. She also stated that retinoschisis is seen only in trauma and in one case of leukemia, which Jack did not have.

5

concerning Jack's unhealthy brain and the lack of any physical injury to Jack. *See, e.g.*, Harvey Brown & Melissa Davis, *Eight Gates for Expert Witnesses: Fifteen Years Later*, 52 Houston Law Rev. 1, 142 (2014) (explaining that an expert's opinion is unreliable if it is founded on facts or assumptions that are contrary to the proven or undisputed facts in the case), 160–62 (explaining that, to be admissible, expert testimony must have "connective reliability," meaning that the expert must connect the underlying data, facts, or assumptions to the expert's opinion). These serious reliability questions should be addressed by the majority opinion.

I would hold that the issue of the reliability of the State's experts' testimony that Jack suffered abusive head trauma is fairly included in Appellant's issue on appeal and would reach the merits of this issue. Because the majority does not, I respectfully dissent.

/s/ Sue Walker
SUE WALKER
JUSTICE

PUBLISH

DELIVERED: February 26, 2015

6